IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

TURNER V. TURNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JENNIE M. TURNER, APPELLEE,

V.

ROBERT L. TURNER, JR., APPELLANT.

Filed January 2, 2018.    No. A-17-266.

Appeal from the District Court for Buffalo County: WILLIAM T. WRIGHT, Judge. Affirmed.

Lee E. Greewald, of Bruner Frank, L.L.C., for appellant.

Heather Swanson-Murray, of Swanson Murray Law, L.L.C., P.C., for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Robert L. Turner, Jr., appeals the order of the district court for Buffalo County denying his complaint to modify physical custody and parenting time of the parties' three children. In addition, Robert challenges the court's award of attorney fees to his former wife, Jennie M. Turner. We affirm.

## BACKGROUND

Robert and Jennie were married in July of 2005 and divorced in April of 2015. They have three children: a daughter born in 2006, a daughter born in 2007, and a son born in 2011. The original dissolution decree granted Jennie sole legal and physical custody of the parties' children subject to Robert's parenting time set forth in the attached stipulated parenting plan. However, the attached parenting plan set forth that the parties share joint legal custody of the children.

The parenting plan provided Robert with parenting time every other weekend from 6:00 p.m. on Friday until 5:00 p.m. on Sunday, every Tuesday from 5:00 p.m. to 7:30 p.m., and at any time that Jennie was working at the local hockey arena. Additionally, the parenting plan allowed Robert one week of parenting time each summer month if he "chooses to go out of town on a trip with the children." However, Robert must "plan any such weeks so as not to interfere with the children's summer activities." The parenting plan provided that Robert would take the children to and from school. Jennie and Robert further agreed to allow the children to have continuous and easy access to telephone contact with the other parent, to assist with initiating and receiving the calls, and to not unreasonably interfere with telephone access. Finally, the parenting plan provided that "[the] terms concerning visitation and access to the children may be adjusted or temporarily modified in length, timing, or terms upon reasonable advance notice, communication and agreement between [Jennie, Robert], and children when appropriate."

At the time the decree was entered, Robert was part owner in an automobile body shop business and Jennie operated an in-home daycare. The decree awarded Jennie $1,172 each month in child support for three children, and required Robert to maintain health insurance for his children through his business. Recognizing that Jennie was a college student with two years of study remaining until she completed her degree, the court awarded her $400 per month for thirty-six months as alimony to help her "improve her earning capacity." At all relevant times, the parties have resided in Kearney.

On December 28, 2015, after she obtained her accounting degree, Jennie began working at an accounting firm with offices in Lexington and Cozad. Two weeks later, on January 14, 2016, Robert filed a complaint to modify custody. He alleged there had been a material and substantial change in circumstances since the entry of the decree. Specifically, Robert alleged that Jennie had been granting him parenting time and responsibilities consistently exceeding that which is outlined in the parenting plan, that Jennie's change in employment warranted an adjustment in parenting time, and the parties have demonstrated an ability to effectively co-parent and communicate regarding the care of the minor children. Robert alleged that it is the best interests of the children that the parties be awarded joint legal and physical custody. He further alleged that child support should be modified in conjunction with any modification of custody. In response, Jennie filed an answer asking the court to dismiss Robert's complaint. In her cross-complaint to modify, Jennie alleged a material change in circumstances and sought modification of the decree and parenting plan. Specifically, Jennie asked the court to eliminate the provision of the parenting plan that allowed Robert to take the children to and from school and to add a requirement that Robert contribute to any daycare expenses she incurs for the children. Jennie later withdrew her request to eliminate Robert's right to take the children to and pick them up from school.

At trial, Robert testified that after the decree was entered, Jennie asked him to watch their children whenever she did not have a sitter. He stated that as a result, until he filed the modification action, he spent time with his children on five days each week. Robert indicated that when Jennie began working out-of-town at the accounting firm, she allowed him to watch the children all day during their Christmas break and after school as needed until she got home. However, Robert testified that after he filed this modification action, this voluntary arrangement to watch the children while Jennie worked deteriorated. By the time of trial, Robert testified he only received

the parenting time specifically allotted to him in the parenting plan. As an alternative to his request for joint physical custody, Robert asked that his parenting time be expanded to include the additional time that he was being allowed prior to the filing of the modification complaint. Robert remains self-employed in the same automobile business as at the time of trial and has flexibility with his schedule to accommodate the children.

Robert testified that he calls his children every night to say goodnight, but sometimes Jennie refuses to answer the phone. He asked the court to clarify what kind of phone contact he is permitted to have with his children to avoid disagreements with Jennie.

Jennie also testified at trial. Jennie continues to live in Kearney, but she works out of the accounting firm's Lexington office and occasionally in their Cozad office. To accommodate her children's school schedule, she works at the office from 8:15 a.m. to 2:30 p.m. To work a total of 40 hours each week, she works from home at night between 8:30 p.m. and 10:30 to 11:00 p.m. However, she does not have the flexibility to work from home during tax season, which is why she asked for daycare expenses in her cross-complaint. She admitted that she and Robert had a childcare arrangement prior to the modification action that allowed her to work a full eight-hour day in Lexington. Jennie terminated this arrangement when Robert filed his complaint to modify. Jennie testified that until May of 2016, she infrequently allowed Robert to watch their children while she was in class.

Jennie called a friend who testified that during an interaction with Robert at the children's elementary school, Robert told her that he would keep taking Jennie to court until she went broke.

The parties presented evidence about their ability, or inability, to communicate and make decisions concerning the children. In general, the record shows that prior to the filing of the modification action, the parties were able to communicate effectively but that this communication became strained after the action was filed.

Evidence was also presented about the parties' respective incomes, as well as an inheritance received by Robert. However, because child support is not an issue in this appeal, we need not detail this evidence further.

The court interviewed the two oldest children, Karlye and Jazlyn, ages nine and almost eleven at the time of trial. Karlye testified she did not like the idea of switching between their mother and father's house every other week because she wanted to see both parents each week. She went on to say that she thought staying after school at her father's house worked well. Karlye told the court that her father calls them every night to briefly wish them goodnight, but the children do not always talk to him. She told the court that she liked her father's goodnight calls. Jazlyn told the court she thought switching between parents would be "more fair." She explained that while she is happy with the amount of time she spends with her father, she wishes she were allowed to have more. Jazlyn testified that her father tries to call them nightly at around 7:30 p.m., but their mom often does not pick up the phone and does not tell the children their father is calling when he does.

The court entered a 26-page order on February 16, 2017, which denied both Robert and Jennie's requests to modify the dissolution decree as it related to child custody, parenting time, child support, and day care expenses. The court thoroughly outlined the evidence and made numerous findings in connection with its conclusions.

With regard to custody, the court found that there had not been a material change of circumstances to justify a change in the parties' physical custody to an award of joint physical custody. In reaching this conclusion, the court noted that Jazlyn and Karlye are doing well and are satisfied with the current physical custody arrangements. The court further noted that the parties' agreed upon parenting plan is less than two years old and thus, modification of custody is "unjustified and clearly premature."

With regard to parenting time, the court similarly found that there had not been a material change in circumstances warranting a modification. The court noted the language in the parties' original parenting plan that encouraged flexibility and that Robert's specified parenting time was "at a minimum." The court included the following provision in its order:

> Notwithstanding the denial of the request for modification of parenting time per se, both parties are directed to return to the same flexibility and accommodation that [they] had previously been providing each other prior to [Robert's] filing of a complaint for modification. The parties will be flexible. They will accommodate each other for their own convenience and that of the children. The children will not sit in the car waiting for Jennie to return from work.

In reference to the court's denial of Robert's request to modify his summer visitation, the court provided ". . . The parties however are again directed to accommodate each other and to exercise flexibility in their interpretation of all elements of the Parenting Plan to include summertime visitation."

The court denied Jennie's request that Robert not be allowed to call the children each night to say "goodnight" and ordered Jennie to accept and accommodate Robert and the children in the making of brief goodnight phone calls prior to 8:00 p.m. each evening.

Last, the court awarded Jennie a $1,500 attorney fee and "specifically warn[ed] [Robert] that if in the future the Court determines that it is [Robert's] intent by his actions to punish Jennie economically, he will be sanctioned."

## ASSIGNMENTS OF ERROR

Robert assigns, consolidated and restated, that the district court erred (1) by failing to grant him joint physical custody or modify his parenting time and (2) in awarding attorney fees to Jennie.

## STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Natalya B. & Nikiah A. v. Bishop A.*, 24 Neb. App. 477, 891 N.W.2d 685 (2017).

Similarly, in an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Lisec v. Lisec*, 24 Neb. App. 572, 894 N.W.2d 350 (2017).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

ANALYSIS

*Joint Physical Custody and Parenting Time Modification.*

Robert assigns that the district court abused its discretion by failing to grant him joint physical custody of the children. In the alternative, he asserts that the district court abused its discretion by failing to modify his parenting time.

Ordinarily, a court will not modify the custody of a minor child unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). The party seeking modification must show first a material change in circumstances, occurring after the entry of the previous dissolution decree and affecting the best interests of the child. *Id.* After establishing a material change in circumstances, it must be shown that a modification of custody is in the child's best interest. *Id.* A material change in circumstances, warranting modification of child custody, means the occurrence of something which, had it been known to the dissolution of marriage court at the time of the initial decree, would have persuaded the court to decree differently. *Floerchinger v. Floerchinger*, 24 Neb. App. 120, 883 N.W.2d 419 (2016).

Upon our de novo review of the record, we find no material change in circumstances affecting the best interests of the children that would warrant a modification of custody or parenting time. While the parties have previously maintained flexibility with regard to Robert's additional parenting time and made further adjustments after Jennie began new employment, these actions do not amount to a material change in circumstances since the entry of the decree. The parenting plan incorporated into the decree specifically stated that "flexibility is encouraged" with respect to Robert's parenting time and noted that his specified parenting time was "at a minimum." After setting forth the specific parenting time, the plan then stated: "The above terms concerning visitation and access to the children may be adjusted or temporarily modified in length, timing, or terms upon reasonable advance notice, communication, and agreement between [Jennie, Robert] and children when appropriate." Thus, it was contemplated at the time of the decree that the parties would maintain flexibility and make adjustments to Robert's parenting time.

Similarly, Jennie's new employment did not amount to a material change in circumstances. Jennie was seeking a college degree in accounting at the time of the 2015 decree. The fact that Jennie obtained employment outside the home upon completion of her education is not a new

circumstance that would have caused the district court to order a different custody arrangement than what was agreed upon by the parties in their parenting plan. The district clearly contemplated that Jennie would obtain outside employment upon completion of her education when it awarded Jennie alimony for 36 months to "assist [her] in achieving the educational background necessary to improve her earning capacity . . . ." Further, Robert filed his complaint for modification only two weeks after Jennie began her new employment, while the parties were still working on suitable arrangements for their children's after-school care.

In sum, we conclude that the additional parenting time and responsibilities Robert exercised after entry of the decree were temporary adjustments as contemplated in the parenting plan's provisions. Similarly, the additional parenting time Robert enjoyed when Jennie began working for the accounting firm was a temporary adjustment in parenting time. Therefore, we find the district court did not abuse its discretion in denying Robert's requests to modify custody or parenting time.

*Attorney Fees.*

Robert also assigns the district court erred in awarding Jennie a $1,500 attorney fee. He argues that the trial court must have awarded the instant attorney fee pursuant to Neb. Rev. Stat. § 25-824(2) (Reissue 2016), which allows the courts to assess attorney fees against a party when that party alleges a claim or defense that the court determines is frivolous or made in bad faith. We disagree. Instead, because the court did not specifically refer to § 25-824(2), we find the court's award of an attorney fee in this action was pursuant to the uniform course of procedure that exists in dissolution cases.

A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees. *White v. White*, 296 Neb. 772, 896 N.W.2d 600 (2017). A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases, as well as in modification actions. See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). The award of attorney fees in a dissolution of marriage action depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Lisec v. Lisec*, 24 Neb. App. 572, 894 N.W.2d 350 (2017).

Here, the foregoing factors support the award of attorney fees to Jennie. Robert initiated this action and was unsuccessful in obtaining a modification of custody, parenting time or child support. While Jennie was also unsuccessful in her request for modification, her cross-complaint was largely a response to Robert's complaint. And, Jennie withdrew her request for part of the relief she initially sought. Further, the relative earning capacities and resources of the parties, and the general equities of the case, favor awarding the $1,500 attorney fee.

CONCLUSION

We conclude the district court did not abuse its discretion is denying Robert's complaint to modify the custody and parenting time arrangements provided in the dissolution decree and parenting plan. Similarly, we find no abuse of discretion in the court's award of attorney fees.

AFFIRMED.